**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NEW PENN FINANCIAL, LLC** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **ANTHONY GIGLIO, TAMMY TURNER,** | : | |
| **COLLEEN SCHOFIELD and CMG** | : | |
| **FINANCIAL** | : | **NO. 16-1827** |

## MEMORANDUM OPINION

**Savage, J.**                                                    **August 3, 2016**

The temporary restraining order ("TRO") entered in this action enjoined CMG Financial ("CMG") from hiring any employees of New Penn Financial, LLC ("New Penn") and enjoined Anthony Giglio, a former New Penn and current CMG employee, from performing services for CMG that are prohibited by the restrictive covenant between him and New Penn. CMG has moved to dissolve or modify the TRO to allow Paul Akinmade, a former New Penn employee who had accepted an offer of employment with CMG prior to the entry of the TRO, to begin working for CMG. In response, New Penn has moved for sanctions for CMG's alleged violations of the TRO. It contends CMG hired Akinmade in violation of the TRO, and Giglio has been performing services for CMG in violation of the TRO and Giglio's restrictive covenant.

Because Akinmade was hired before the TRO was entered, there can be no violation of the TRO. Consequently, there is no need to modify or dissolve the TRO. New Penn has not shown, by clear and convincing evidence, that Giglio has been performing prohibited services for CMG. Because there are no violations of the TRO, the motion for sanctions will be denied.

## Background

On March 31, 2016, defendants Anthony Giglio, Tammy Turner and Colleen Schofield resigned from New Penn and joined CMG.[1]  Five days later, Akinmade, whom Giglio had supervised at New Penn,[2] reviewed LinkedIn profiles of several CMG executives.[3]  Upon learning that Akinmade had viewed his profile, Peter Gilbert, CMG's chief credit and operating officer, contacted him and put him in contact with CMG's recruiting department.[4]  On April 22, 2016, Akinmade accepted an offer of employment from CMG and resigned from New Penn, giving two weeks' notice.[5]  That same day, New Penn required him to leave.[6]  Nevertheless, New Penn paid him through May 6, 2016.[7]

On April 6, 2016, after Giglio, Turner and Schofield left New Penn and before Akinmade resigned, New Penn filed a complaint against Giglio, Turner, Schofield and CMG in the Montgomery County Court of Common Pleas.  Five days later, it filed an emergency motion for injunctive relief.  The defendants removed the action on April 18, 2016.  Three days later, New Penn filed its motion for a TRO.

On April 25, 2016, we entered a TRO enjoining CMG from contacting and hiring New Penn employees, and enjoining Giglio from providing services for any New Penn

---

[1] *See* Akinmade Dep. Tr. at 307:3-4, 310:13-18, 318:6-15.

[2] *Id.* at 316:10-14; 7/12/16 Hr'g Tr. at 62:17-18.

[3] Akinmade Dep. Tr. at 283:19-25, 285:25-286:5.

[4] *Id.* at 285:25-286:5, 286:20-287:9, 287:22-288:20 & Exs. 5, 6.

[5] *Id.* at 10:8-14.

[6] *Id.* at 183:22-184:1, 184:23-187:8

[7] *Id.* at 279:16-20.

competitor.[8]   Two days later, seeking to resolve the employment status of Akinmade, who was hired before but had not begun working at CMG when the TRO was entered, the defendants moved for clarification of the TRO.[9]   The defendants also sought clarification of what services Giglio could perform at CMG without violating the TRO.

On May 5, 2016, we entered an order clarifying that "services" in the TRO meant "services" as defined in the March 9, 2011 restrictive covenant between Giglio and New Penn.[10]   The clarification order did not address CMG's other request because the circumstances of Akinmade's employment were uncertain at that time.   At the pretrial conference on May 4, we directed counsel for New Penn to depose Akinmade to learn the facts surrounding his hiring by CMG.

<h3 style="text-align:center">Motion to Dissolve or Modify TRO</h3>

Although CMG labels its motion as one seeking to dissolve or modify the TRO, it is actually requesting clarification whether Akinmade may begin his employment with CMG.   It contends Akinmade was hired when he accepted CMG's offer of employment on April 22, 2016, three days before the TRO was entered.   New Penn counters that Akinmade remained a New Penn employee until May 6, 2016, the last date on which Akinmade was on its payroll.   It asserts that Akinmade began working for CMG on May 2, 2016, when he traveled to California to meet with CMG employees.   Yet, at a hearing on July 12, 2016, counsel for New Penn conceded that CMG had already hired

---

[8] Temporary Restraining Order (Doc. No. 10).

[9] The defendants also sought clarification of the employment status of another individual hired by CMG whose status is no longer an issue.   *See* Mem. in Opp. to Mot. to Dissolve TRO and in Support of Mot. for Sanctions (Doc. No. 23-2) at 2 n.2.

[10] Doc. No. 19.

Akinmade before the TRO was entered because he had been offered and accepted employment earlier.[11]

The purpose of injunctive relief is to prevent future harm, not to punish past conduct. *SEC v. Bonastia*, 614 F.2d 908, 912 (3d Cir. 1980). There can be no violation for conduct that occurred before the entry of a TRO. The TRO was entered after CMG had hired Akinmade. Akinmade was hired when he accepted CMG's offer of employment on April 22, 2016. The TRO issued three days later.

To prohibit Akinmade from employment at CMG would be to punish CMG for conduct that had occurred before the TRO. Therefore, we hold that CMG's hiring or employment of Akinmade does not violate the TRO.

### Motion for Sanctions

In moving for sanctions, New Penn contends Akinmade's employment with CMG violates the TRO and that Giglio has been performing services for CMG in violation of his restrictive covenant with New Penn. Having determined that CMG did not violate the TRO when it hired Akinmade, we now consider whether Giglio's services performed at CMG violate the TRO.

To support a civil contempt sanction, the movant must demonstrate, by clear and convincing evidence, that the defendants knew of and disobeyed a valid order. *FTC v. Lane Labs-USA, Inc.*, 624 F.3d 575, 582 (3d Cir. 2010) (citations omitted). Ambiguities are resolved in favor of the nonmovant. *Id.* (quoting *John T. v. Del. Cnty. Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003)).

---

[11] 7/12/16 Hr'g Tr. at 23:16-17.

The TRO prohibits Giglio from providing "services" for CMG, as defined in his March 9, 2011 restrictive covenant with New Penn.  The restrictive covenant defines "services" as

> either (1) performing duties which are the same as or similar to the duties performed by [Giglio] for [New Penn], or (2) engaging in the training or supervision of other employees who are performing duties which are the same as or similar to the (i) duties performed by [Giglio] for [New Penn] or (ii) duties performed by employees who were under the direct supervision or management of [Giglio].[12]

CMG argues that Giglio is not performing the same or similar duties that he had performed at New Penn.  He is not training or supervising anyone with the same or similar duties that he had performed or that anyone he had supervised performed at New Penn.  As vice president of retail operations at New Penn, Giglio's duties involved coordinating the recruiting and hiring of salespersons.[13]  Giglio testified that at New Penn, he managed one of its retail channels, managing and hiring loan originators to "go out and find loans."[14]  He worked with regional managers to evaluate their productivity and hiring needs.[15]

At CMG, Giglio is involved in the development and technical implementation of CMG's loan operating system ("LOS"),[16] something he did not do at New Penn.[17]  New Penn counters that despite his nominal title within CMG's information technology

---

[12] *See* Complaint, Ex. A, Mar. 9, 2011 Restrictive Covenant Agreement, ¶ 1.F.vii (attached to Notice of Removal, Doc. No. 1).

[13] 7/12/16 Hr'g Tr. at 48:24-49:7.

[14] *Id.* at 48:24-49:7.

[15] *Id.* at 49:11-21.

[16] *Id.* at 48:11-23, 50:6-17.

[17] *Id.* at 49:22-50:5.

department, he is actively involved in retail lending by participating in senior management meetings, loan processing and approvals, leases for retail lending office space, and reporting of procedures to senior management.

According to Giglio, CMG hired him to manage its retail channel when his restrictive covenant with New Penn expired.[18]   In the meantime, however, his responsibility has been limited to working with a vendor to develop and implement CMG's loan operating system.[19]   He testified that he has no present involvement in loan origination at CMG.[20]   He is not supervising or training any CMG employees.[21]

In his role as LOS implementation manager,[22] Giglio is assisting the vendor in building CMG's "point of sale" ("POS") system, a part of the LOS.[23]   He explained that although all CMG employees will use the LOS, only those involved in loan origination will use the POS system.[24]   He testified that his role is limited to the technical aspects of building and implementing the system.[25]   He is not involved in the hiring and growth activities for which he was responsible at New Penn.[26]

There is no evidence that Giglio has been involved in loan origination, or managing and hiring loan originators.  At most, there is testimony that Giglio has been

---

[18] *Id.* at 51:3-15.

[19] *Id.* at 50:6-17.

[20] *Id.* at 55:24-56:4.

[21] *Id.* at 50:18-51:2, 52:19-20.

[22] *Id.* at 48:11-12.

[23] *Id.* at 63:5-22.

[24] *Id.* at 59:24-60:6.

[25] *Id.* at 65:3-16.

[26] *Id.* at 51:17-52:5, 65:3-16.

involved in the technical implementation of loan origination software that is part of the LOS suite, including the POS system and a contact referral management system, which loan officers will use to manage client relations.[27]   There is no clear evidence that he has been performing the same or similar services for CMG that he performed for New Penn.   Thus, we conclude that New Penn has not demonstrated, by clear and convincing evidence, that Giglio knowingly violated the TRO.

## Conclusion

Because CMG hired Akinmade before the TRO was entered, the TRO does not prohibit his working for CMG.   There is no need to modify or dissolve the TRO.   New Penn has not shown that Giglio has performed services that violate his restrictive covenant with New Penn.   Therefore, because there has been no violation of the TRO, CMG's motion and New Penn's motion will be denied.

---

[27] *See id.* at 88:21-90:7.